IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:13cr227 |
| | § | Judge Mazzant |
| MICHAEL THOMAS | § | |

## <u>GOVERNMENT'S MOTION IN LIMINE</u>

The United States files this Motion in Limine to request that counsel for the defendant, and through such counsel any and all defense witnesses, be instructed by appropriate order to refrain from making any mention or interrogation, directly or indirectly, suggesting the following:

1.  That the matter is or should have been handled as a civil rather than a criminal matter;

2.  That the work performed by G-C Partners in the present case should be called into question because of claims of incompetence alleged by unrelated parties in the Northern District of Texas made in 2012.

3.  Any punishment the defendant may face if he is convicted in this case, including any specific punishment range and any effect on the defendant's family or friends caused by this prosecution of possible conviction.

I.      <u>Existence of a civil remedy is irrelevant to the criminal proceeding.</u>

The defendant, Michael Thomas (Thomas) is charged in this case with intentionally causing damage to a protected computer, in violation of 18 U.S.C. § 1030(a)(5)(A).   The government anticipates that defense counsel may argue or suggest through examination of

**THOMAS - GOVERNMENT'S MOTION IN LIMINE**
**PAGE 1 OF   6**

witnesses that the complaint against the defendant could have been, should have been, or is better handled as a civil matter, not as a criminal matter.   The existence of a civil remedy available to ClickMotive LP, the victim, is wholly irrelevant to any element of the charged offense in the instant criminal prosecution and its mention will confuse and mislead the jurors.   Any evidence or argument relating to the existence or availability of civil remedies, therefore, should be excluded under Federal Rules of Evidence 401 and 403, and, in any event, excluded to avoid unduly delaying the trial and wasting time.

The Fifth Circuit held as much in *United States v. Anderson*, 933 F.2d 1261 (5th Cir. 1991). In that case, the Fifth Circuit affirmed a district court's refusal under Rule 403 to allow defendants to introduce evidence of a parallel civil proceeding. It reasoned that such evidence was likely to confuse the jury and unduly delay the trial. *Id*. at 1276.

As in *Anderson*, then, the jury in this case likely will be confused by what would amount to be testimony from defense counsel that civil remedies were or are available to ClickMotive. Evidence about civil remedies would allow jurors to believe, incorrectly, that there is something improper about a criminal case regarding intellectual property, or that the victim influenced the charging decision. Either significantly heightens the risk that jurors might become confused between civil and criminal systems. Any *de minimis* probative value that might be associated with evidence that a civil remedy exists or existed, therefore, is grossly outweighed by the prejudice to the government, and will unduly delay and complicate the trial.

Additionally, evidence that the victim had or has a civil remedy invites the jurors nullify the government's decision to pursue a criminal prosecution. The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the

government has met its burden of proof.   *See, e.g.*, *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant.") (*citing United States v. Kerley*, 838 F.2d 932, 938 (7th Cir.1988), et ano.); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'" (*quoting United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983)). *See generally Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("Neither court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath.").

Accordingly, the government respectfully requests that the Court exclude any evidence, testimony, or argument suggesting that an alternative civil remedy existed or exists, or that this case should have been, or could have been, better handled as a civil matter than a criminal case. The government further requests that the Court instruct defense counsel that he is prohibited from mentioning the existence or availability of civil remedies for theft of trade secrets, or suggesting the matter would be or is better resolved through a civil action, in opening statement, through

cross-examination of the government's witnesses or through direct examination of defense witnesses, or in closing argument.

II.   <u>Prior, unsubstantiated allegations of misconduct by the employer of a witness are not relevant to the instant criminal proceedings.</u>

In approximately 2012, a Securities & Exchange Commission Receiver requested that G-C Partners image certain computers in connection with the matter captioned as United States v. Brion Randall, in the Northern District of Texas.   The SEC Receiver subsequently claimed the work was incorrectly performed, even alleging that a computer had been tampered with. Around the same time, the United States Attorney's Office for the Northern District of Texas was preparing for trial on *United States v. Musacchio*, 3:10CR308, in which the government expected to call G-C Partners as a testifying expert.   Musacchio's defense claimed that the poor work G-C Partners performed for the SEC amounted to exculpatory material per *Brady v. Maryland*. According to information received from the Northern District of Texas, no one from G-C Partners testified in the Musacchio trial.

In the instant case, the government intends to call two witnesses, Rudi Peck and Chris Gillespie, who are current and former employees of G-C Partners, respectively.   The witnesses will testify for the sole purpose of authenticating certain computer images and data logs, which were extractedand then turned over to the FBI.   These are essentially chain of custody witnesses.   Neither witness was implicated in the alleged wrongdoing alleged in the Northern District of Texas, nor are they likely to know the substance of any alleged wrongdoing by their colleagues four years ago.   Accordingly, to question them about the circumstances of the

Randall or Musacchio cases now would be irrelevant to their testimony, creating confusion for the jury and unduly delaying the trial.

Accordingly, the government respectfully requests that the Court exclude any evidence, testimony, or argument suggesting that any allegations of misconduct by the witnesses' employer, current and former, raised by unrelated parties in the Northern District of Texas.

III.     Counsel shall refrain from referencing any potential penalty, effect of the proosecution, or otherwise seek the jury's sympathy.

During the pendency of Thomas's flight, Thomas sent a number of communications to the government, including to the lead prosecutor and the case agent.    These e-mails alleged that the pending prosecution had ruined Thomas' life, that the government was harming Thomas's family (including a minor child), and suggested that the prosecution would result in Thomas's death.    Any references to the potential punishment Thomas faces if convicted, e.g., the implications of a felony conviction, potential jail sentence, concerns about future employment, are all irrelevant to the pending charge and should be precluded.    Likewise, any suggestion that this conviction has resulted in harm to Thomas's family, including his young child, would be irrelevant and improper.    Indeed, such references have no probative value and are designed solely to invoke the jury's sympathy and to invite nullification.    See § I, infra.

Accordingly, the government respectfully requests that the Court instruct all parties to make no mention, reference, illusion, or suggestion as to the ramifications of conviction, possible

**THOMAS - GOVERNMENT'S MOTION IN LIMINE**
**PAGE 5 OF   6**

penalty, effect of the prosecution on Thomas or his family, or otherwise invite sympathy for

Thomas.

Respectfully submitted,

JOHN M. BALES
United States Attorney
Eastern District of Texas

/s/      *Camelia Lopez*
Camelia Lopez
Assistant United States Attorney
Texas Bar No. 24036990
101 E. Park Blvd., Suite 500
Plano, Texas 75074
tel: (972) 509-1201
fax: (972) 509-1209
email: Camelia.Lopez@usdoj.gov

## CERTIFICATE OF CONFERENCE

I certify that I attempted to consult with counsel for the defendant but had not received a response at the time of this filing.

/s/      *Camelia Lopez*
Camelia Lopez

## CERTIFICATE OF SERVICE

I certify that a copy of this document was served by email to defense counsel, Aaron Williamson on May 31, 2016, and filed by ECF on June 1, 2016.
.

/s/      *Camelia Lopez*
Camelia Lopez

**THOMAS - GOVERNMENT'S MOTION IN LIMINE**
**PAGE 6 OF   6**