IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:13cr227 |
| | § | Judge Mazzant |
| MICHAEL THOMAS | § | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this sentencing memorandum in support of certain upward adjustments applicable to sentencing pursuant to the United States Sentencing Guidelines (U.S.S.G.), namely, those related to loss, sophisticated means, and use of a special skill. The government's position is that the guideline range reflected in the PSR is correctly calculated and applicable in this case.

I. **Loss**

If the attorney's fees remain excluded from the total loss amount, the applicable loss amount is correctly calculated at $121,641.21, resulting in an upward adjustment of 8 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(E). For purposes of criminal convictions under 18 U.S.C. § 1030, loss is defined in § 1030(e)(11) as "*any reasonable cost* to any victim, *including* the cost of responding to an offense, conducting a damage assessment, and restoring data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service" (emphasis added). U.S.S.G. § 2B1.1, cmt. n. 3(A)(v)(III) similarly states "actual loss includes the following

pecuniary harm, regardless of whether such pecuniary harm was reasonably foreseeable: *any reasonable cost to any victim*, *including* the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other damages incurred because of interruption of service" (emphasis added). The Fifth Circuit in *United States v. Musacchio*, 590 Fed.Appx. 359 (5th Cir. 2014), specifically pointed out that "the use of the word 'includes' in Note 3(A)(v)(III) indicates the loss described in that provision should be considered in addition to actual loss, as defined in Note 3(A)(i)." *Musacchio* at 365. The use of the term "includes" does not limit any calculation, but instead adds to it by describing potential categories. *Id*. In the present case, the defendant is attempting to limit what can be included in a loss calculation. His position is not supported by law and the costs incurred and reported by ClickMotive to address the defendant's criminal actions are properly counted as loss.

It is clear that the defendant is arguing that opportunity costs of current employees' time diverted to address the harm he caused should not be counted as loss. However, case law does not support this position. The Court in *United States v. Millot*, 433 F.3d 1057 (8th Cir. 2006), addressed this issue. Millot worked as a systems analyst for Aventis Pharmaceuticals and his position was later outsourced to IBM. When several other Aventis employees were offered positions with IBM, Millot resigned and then breached the system. *Millot* at 1058. Like Thomas, Millot worked was found guilty at trial of violating 18 U.S.C. § 1030(a)(5)(A) after he, among other things, intentionally and without permission disabled the remote access capabilities of other employees. *Id*. Former Aventis employees then working for IBM performed the bulk of

activities in response to Millot's intrusion. On appeal, Millot argued that any costs incurred by IBM should not have been considered in determining loss because there was no evidence that IBM specifically billed Aventis the amount alleged to have cost to repair the system. *Id*. The Court upheld the loss amount by relying on a similar challenge in *United States v. Middleton*, 231 F.3d 1207, 1213-14 (9th Cir. 2000). In *Middleton*, the defendant argued that since salaried employees fixed the damage caused by the defendant's conduct, the government could not prove that the defendant had caused damage in excess of the $5,000 minimum. *Id*. The Ninth Circuit disagreed and held that the reasonableness of the time employees spent and their hourly rates were questions for the trier of fact, and that there is "no basis to believe that Congress intended the element of 'damage' to depend on a victim's choice whether to use hourly employees, outside contractors, or salaried employees to repair the same level of harm to a protected computer." *Millot* at 1061, *citing Middleton* at 1214. *See also United States v. Sablan*, 92 F.3d 865, 870 (9th Cir. 1996) (holding it proper to base the estimated cost of repairs on the standard hourly rate for the employees who fixed the problem because their time would have otherwise been devoted to assisting bank customers). Business losses, in the form of "opportunity cost" for employees who would otherwise have worked on other projects, are properly included under the sentencing guidelines regardless of whether these costs were foreseeable to the defendant. *See Musacchio*, 590 Fed. Appx. at 365-66; *see also United States v. Schuster*, 467 F.3d 614, 617 (7th Cir. 2006), *United States v. Fowler*, 445 Fed. Appx. 298, 300 (11th Cir. 2011). As explained by ClickMotive's Chief Financial Officer while testifying at trial, all loss established by ClickMotive was sustained in the investigation and response to harm caused by the defendant.

In sum, the types of expenses incurred by ClickMotive clearly fall within the Mandatory Victim Restitution Act's (MVRA) catch-all provision of 18 U.S.C. § 3663A(b)(4) which allows an award of restitution for "other expenses incurred during participation in the investigation or prosecution of the offense []." Furthermore, with respect to the attorney's fees, the MVRA authorizes a court to award a victim attorney's fees incurred during participation or prosecution of an offense that requires mandatory restitution under the catch-all provision of 18 U.S.C. § 3663A(b)(4). *See United States v. Dwyer*, 275 F.App'x 269, 270 (5th Cir. 2008) (affirming award of attorney's fees as restitution where incurred fees were associated with investigating criminal activity); *United States v. Beaird*, 145 F.App'x 853, 854-55 (5th Cir. 2005) (affirming award of attorney's fees as restitution when fees incurred were associated with assistance to FBI in investigation of offense).

II. **Sophisticated means**

"Sophisticated means" is "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG § 2B1.1, cmt.9(B). Sophisticated means can involve a "wide range of criminal conduct," *United States v. Allan*, 513 F.3d 712, 715 (7th Cir. 2008), and focuses on activities that facilitate execution of offenses or make detection of criminal activity more difficult. *United States v. Abulyan*, 2010 WL 2232696, at *2 (5th Cir. June 3, 2010).

In U.S.S.G. § 2B1.1(b)(10), there are three categories of information that cause a two-level enhancement. Only the first category – a two-level enhancement "[i]f the *defendant* relocated, or participated in relocating, a fraudulent scheme to another jurisdiction," U.S.S.G. §

2B1.1(b)(10)(A) (emphasis added) – is predicated on a specific action by a defendant. The other two categories of information – where "a substantial part of a fraudulent scheme was committed from outside the United States," U.S.S.G. § 2B1.1(b)(10)(B), and where "the *offense* otherwise involved sophisticated means," U.S.S.G. § 2B1.1(b)(10)(C) (emphasis added) – are not similarly conditioned on a *defendant's* particular action. Indeed, the Guidelines' use of the term "offense" is determinative: it is the scheme that bears description, not the defendant's conduct.

Support for this analysis can be drawn from two analogous usages of the term "sophisticated means" in the Guidelines. First, in *United States v. Miles*, 360 F.3d. 472 (5th Cir. 2004) for example, one defendant objected to the imposition of an enhancement for sophisticated money laundering because only the other defendant engaged in the underlying conduct. *Id.* at 472. The court rejected this theory and concluded that since the first defendant aided and abetted the conduct of the second defendant and that the underlying transaction was an incident in a jointly undertaken activity which was reasonably foreseeable to the first defendant, she was properly subject to the enhancement. *Id.*

Similarly, the definition of "sophisticated means" in tax-related cases, U.S.S.G. § 2T1.1(b)(2) and cmt. 5, is identical to the definition of "sophisticated means" in fraud-related cases, U.S.S.G. § 2B1.1(b)(10)(C). An amendment to U.S.S.G. § 2T1.1(b)(2) resolved a circuit split over proper application of the enhancement: the amendment specifically struck the word "defendant" from the sentence describing sophisticated acts and replaced it with a more

GOVERNMENT'S SENTENCING MEMORANDUM

PAGE 5 of 9

generalized description of "conduct" involved without reference to a particular actor.[1] The commentary to the amendment stated:

> The amendment resolves a circuit conflict regarding whether the enhancement applies based on the personal conduct of the defendant or the overall offense conduct for which the defendant is accountable. *Consistent with the usual relevant conduct rules, application of this new enhancement for sophisticated concealment accordingly is based on the overall offense conduct for which the defendant is accountable.*

18 U.S.C. Appx. 577 (1998) (emphasis added).

The defendant's efforts to conceal his activities satisfy the standard set forth in U.S.S.G. '2B1.1(b)(10)(C) and cmt. B.9(B). Using webmail accounts to forward employees' email, which concealed his identity, is identical conduct to the defendant in *U.S. v. Musacchio*, 590 Fed.Appx. at 366, where the 5th Circuit upheld the upward adjustment. The Court specifically stated that "though many individuals familiar with computers likely could have developed a similar process, we previously have applied the enhancement 'in cases involving some method that made it more difficult for the offense to be detected, even if that method was not by itself particularly sophisticated.'" *Musacchio* at 366-67, *quoting U.S. v. Valdez*, 726 F.3d 684, 695 (5th Cir 2013). But in the instant case, the defendant's conduct was not limited to forwarding emails to an external webmail account. Particularly relevant here is that he disabled notification systems that would have alerted others to the damage he was causing – the very definition of making his conduct more

---

[1] The amendment changed a description of "where the defendant used offshore bank accounts, or transactions through corporate shells or fictitious entities" to a sentence stating that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore bank accounts ordinarily indicates sophisticated concealment." 18 U.S.C. Appx. 577 (1998).

difficult to detect.  Furthermore, while tampering with monitoring systems and the VPN availability, the defendant then deleted the internal wiki pages that would have assisted others in correcting the problem – thus again making it more difficult for the offense to be detected.  As presented at trial, ClickMotive had difficulty resolving the problems created by the defendant, specifically because of the methods deployed by the defendant.  The adjustment is appropriate.

### III. Abuse of Position or Trust or Use of Special Skill

The PSR includes a two-level upward adjustment for use of a special skill.  While the government agrees that this adjustment applies, the government argues that this adjustment applies also because the defendant abused a position of trust.

Comment n. 1 to U.S.S.G. § 3B1.2 defines public or private trust as "a position of public or private trust characterized by professional or managerial discretion… Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.  For this adjustment to apply, the position [] must have contributed in some significant way to facilitating the commission or concealment of the offense."  Everything about the defendant's position as ClickMotive's network administrator conforms with this definition.  He had unfettered and unparalleled access to the entire company's operating systems and the ability to access every employee's email account and control the employees' ability to work remotely.  He had the ability to grant and revoke access to the physical property through the door access badges, and the ability – and skill- to troubleshoot and correct any problems that arose within his extensive domain.  At trial, witnesses testified that he could have brought down the entire company if he wanted to.  Not

only was an enormous amount of trust was placed in the defendant, but the defendant possessed the special skills necessary to carry out these tasks in a meaningful and productive way. The heart of the trial was his abuse of the trust placed in him and the exploitation of his skills for harm. Accordingly, the adjustment is deserved.

## IV. Conclusion

For the foregoing reasons, the government respectfully requests that the adjustments for loss, sophisticated means, and abuse of trust/special skill be applied as recommended in the PSR, and that full restitution be awarded for ClickMotive's expenses, to include reasonable attorney's fees.

Respectfully submitted,

John M. Bales
United States Attorney
Eastern District of Texas

*Camelia Lopez*
Camelia Lopez
Assistant U.S. Attorney
101 E. Park Blvd. Suite 500
Plano, TX 75074
(972) 509-1201 main
(972) 509-1209 fax
Camelia.Lopez@usdoj.gov

## Certificate of Service

I certify that a copy of the Government's Sentencing Memorandum was sent to counsel for defendant, Aaron Williamson, via PACER/ECF on August 24, 2016.

*Camelia Lopez*
Assistant U.S. Attorney